**W. B. FULTZ, Appellant,**

v.

**ANZAC CORPORATION, Appellee.**

No. 3900.

Court of Civil Appeals of Texas.

Eastland.

July 3, 1964.

Rehearing Denied July 24, 1964.

Jennings, Montgomery & Dies, Graham, for appellant.

Woodward & Johnson, Coleman, for appellee.

GRISSOM, Chief Justice.

Anzac Corporation, successor in title to Mrs. Margaret Cheney, sued W. B. Fultz to establish a trust and the right to purchase 7/24ths of a ½ interest in an oil lease, which one-half interest Fultz had bought from A. G. Hill. The court held that, as a matter of law, Fultz held said 7/24ths interest in trust and that Anzac Corporation could compel Fultz to share his purchase with it. Fultz has appealed.

In March, 1939, M. G. Cheney, then the husband of Margaret Cheney, obtained a lease on land in Coleman County. On February 18th, 1948, Anzac Oil Corporation, a distinctly different legal entity than plaintiff-appellee Anzac Corporation, M. G.

Cheney and L. J. Maxwell conveyed a ½ interest in that lease to A. G. Hill. On the same day only Anzac Oil Corporation and A. G. Hill executed an operating agreement wherein Anzac Oil Corporation was appointed only by Hill as operator of the lease and their liabilities and the authority of said operator were stated. That operating agreement also contained in its printed form the following two widely separate provisions:

"In the event any party desires to sell all or any part of his or its interest in the unitized area, the other parties hereto shall have a preferential right to purchase the same. In such event, the selling party shall promptly communicate to the other parties hereto the offer received by him or it from a prospective purchaser ready, willing and able to purchase the same, together with the name and address of such prospective purchaser, and said parties shall thereupon have an option for a period of ten (10) days after the receipt of said notice to purchase such undivided interest for the benefit of the remaining parties hereto as may agree to purchase the same; provided that any interest so acquired shall be shared by the parties purchasing the same upon the basis of their then existing interest in the unitized area; provided, further, the limitations of this paragraph shall not apply where any party hereto desires to dispose of its interest by merger, reorganization, consolidation or sale of all its assets, or a sale of its interest hereunder to a subsidiary or to any company in which any one party hereto owns a majority of the stock.

\* \* \* \* \* \*

"This agreement shall extend to and bind the respective heirs, executors, administrators, successors and assigns of the parties hereto, and it is hereby agreed that the terms and provisions hereof shall constitute a covenant run-

ning with the lands and leasehold estates covered hereby."

On August 1st, 1955, Anzac Oil Corporation conveyed its interest in said lease to W. B. Fultz. On August 4th, 1955, Mrs. cheney and Fultz made the following agreement:

"WHEREAS, heretofore under date of August 1, 1955, Anzac Oil Corporation did assign, transfer and convey to W. B. Fultz all of its right, title and interest in and to certain leases, royalties, oil payments, mineral interest and other of its assets; and,

"WHEREAS there was in existence, and such assignment above referred to was made subject to, certain Joint Operating Agreements wherein Anzac Oil Corporation and/or M. G. Cheney was designated as the Operator by the other parties owning joint interest in and to certain leases, the said Margaret Booth Cheney owning undivided interests in such leases, which were not conveyed to the said W. B. Fultz; and,

"WHEREAS it is the desire of the undersigned parties, that the present status of the parties under such Joint Operating Agreements be set forth in writing.

"NOW THEREFORE KNOW ALL MEN BY THESE PRESENTS, That We, Margaret Booth Cheney, acting individually and as Independent Executrix of the will and estate of M. G. Cheney, deceased, and W. B. Fultz, do hereby mutually agree as follows:

"1. That Margaret Booth Cheney, both individually and in the capacity aforesaid, shall hence-forth be deemed as a Non-operator on all of the Joint Operating Agreements in force and effect and covering the leases which were the subject of the above assignment, it being here specifically provided that the liability of the said Margaret Booth Cheney shall be limited as further provided in said Joint Operating Agreements and in the same manner as the other Non-operators on same.

"2. Insofar as the said Margaret Booth Cheney is concerned, she does hereby state and declare that W. B. Fultz shall be the Operator of the lease properties, insofar as said lease properties are covered by the Joint Operating Agreements now in force and effect, and subject to all of the terms and provisions of each of said Joint Operating Agreements.

"3. It is further understood and agreed that it is not intended that this instrument shall or can affect any of the rights, liabilities or duties of the other parties who own interest in and to such leasehold estates."

On January 6, 1961, Mrs. Cheney conveyed her interest in said lease to Anzac Corporation, which has no connection with Anzac Oil Corporation. On March 13, 1961, A. G. Hill assigned to Fultz his ½ interest in said Coleman County lease subject to the provisions of the operating agreement between Anzac Oil Corporation and Hill, dated February 18, 1948.

Appellee admits that if Mrs. Cheney's interest in the lease had been assigned to Anzac Oil Corporation before she made said contract with Fultz on August 4th, 1955, that it could not have claimed an option because she was not then a party to the operating agreement executed by Anzac Oil Corporation and Hill in February, 1948. But, appellee says that by virtue of (1) the 1948 operating agreement between Anzac Oil Corporation and A. G. Hill, which contained said option provision, and (2) the 1955 contract between Mrs. Cheney and Fultz that Mrs. Cheney became a party to said 1948 operating agreement and thereby acquired a right to share with Fultz in his purchase from Hill in proportion to her interest in the lease. The trial court held that

said contracts, as a matter of law, had that effect. We think they not only do not compel that conclusion but that they constitute no evidence thereof.

It is evident that the operating agreement executed by Anzac Oil Corporation and Hill bound only those two parties, their successors, heirs and assigns, and that the option Hill and Anzac each gave to the other, so far as that agreement is concerned, granted no option right to any other person, except their heirs, successors and assigns. Mrs. Cheney is none of these. If Mrs. Cheney acquired the asserted right, it was necessarily because of a grant thereof by Fultz in the August 4, 1955, contract. The contract between Mrs. Cheney and Fultz shows that it was executed as a consequence of the assignment four days previously by Anzac Oil Corporation to Fultz of its interests in the Coleman lease. Anzac Oil Corporation had been the operator. It recites that said assignment is subject to certain joint operating agreements wherein Anzac Oil Corporation "and/or M. G. Cheney was designated as the operator by the other parties owning joint interests in and to certain leases. * * *" The only operating agreement in the record, other than the one between Mrs. Cheney and Fultz, is the one wherein Anzac Oil Corporation was appointed by Hill alone as operator and Hill and Anzac Oil Corporation granted each other an option. Anzac Oil Corporation was not designated as operator "by the other parties" owning joint interests in the lease. Anzac Oil Corporation was designated operator only by Hill. M. G. Cheney was not designated as the operator. No one was granted an option except Anzac Oil Corporation and Hill. That right inured to the benefit of their heirs, successors and assigns. By its terms, Mrs. Cheney obtained no right to purchase any part of any interest to be acquired by Fultz.

The August 4, 1955 contract between Mrs. Cheney and Fultz refers to the sale by Anzac Oil Corporation to Fultz and recites that Mrs. Cheney owned an interest in the lease which had not been conveyed to Fultz and that they desired to state in writing the present status of the parties under all operating agreements. They then agreed only that (1) Mrs. Cheney should be deemed a non-operator under all the operating agreements in effect covering the lease assigned in part by Anzac Oil Corporation to Fultz and that Mrs. Cheney's liability as a non-operator should be limited as the liability of non-operators was limited in the operating agreements; (2) that Mrs. Cheney declared that Fultz was the new operator of the lease, insofar as said lease was covered by the joint operating agreements then in force, and that, as such operator, he was subject to the terms and provisions of all operating agreements and (3) that it was not intended thereby to affect the rights, liabilities or duties of others who owned interests in said lease.

█ We find nothing in said contracts that compel the conclusion that Mrs. Cheney thereby became a party to the 1948 operating agreement between Hill and Anzac Oil Corporation and acquired the right to share in Fultz' purchase from Hill. That right was granted only to Anzac Oil Corporation and Hill and their successors, heirs and assigns. A contract appointing Fultz as operator, subject to previous operating agreements, and stating that the present status of Mrs. Cheney and Fultz under prior operating agreements was that Mrs. Cheney should be deemed a non-operator, with her liability limited as the liability of non-operators was limited in other operating agreements simply did not have the effect of giving Mrs. Cheney the right which her successor here asserts. If it had been intended for Fultz to thereby transfer to Mrs. Cheney the right here asserted, it could have been easily accomplished by a simple provision to that effect in their contract.

█ Appellee stresses the fact that the conveyances to Fultz were "subject to" existing operating agreements and that the contract between Mrs. Cheney and Fultz

appoints Fultz operator "subject to" all operating agreements in effect. The only other operating agreement in the record is the one between Anzac Oil Corporation and Hill. So far as the right of Mrs. Cheney to share in a sale by Hill is concerned, an agreement between Mrs. Cheney and Fultz that Fultz should be the operator and Mrs. Cheney a non-operator, with her liability limited as in other operating agreements and that the agreement is "subject to" the operating agreement between Anzac Oil Corporation and Hill, does not purport to grant to Mrs. Cheney the rights of an option holder expressly granted only to Hill and Anzac Oil Corporation. Contracting "subject to" such a contract, on the contrary, recognizes the right of Hill and Anzac Oil Corporation to purchase from the other but does not make Mrs. Cheney a party to that contract or make their purchase inure to her benefit. Although the printed form would have been more appropriate had all owners signed it, nevertheless, it expressly bound only "the parties hereto" and was for the benefit only of the parties signing it and their successors, heirs and assigns. If it meant anything further applicable to the right asserted by Mrs. Cheney's successor, it was that their agreement was "subject to" the right of Fultz, as the assignee of Anzac Oil Corporation, to purchase his proportionate share of any interest sold by Hill.

All parties say the contracts are unambiguous. There was no pleading authorizing introduction of parol evidence tending to show an intention to give Mrs. Cheney such a right. There was no offer of such evidence. There is no suggestion that other material admissible evidence exists. There is no prayer for a remand. The case appears to be fully developed. The contracts are not susceptible to the construction urged by appellee. The judgment is reversed and judgment is rendered for appellant.

COLLINGS and WALTER, JJ., concur.